[Crim. No. 238. Fourth Appellate District.—January 24, 1933.]

THE PEOPLE, Respondent, v. JOSEPH R. HATFIELD, Appellant.

164

Ernest R. Utley for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—Joseph R. Hatfield, John Williams and Robert Kloss were jointly charged by indictment with the crime of murder and tried together. The jury found Williams and Kloss not guilty and found Hatfield guilty of manslaughter, and he has appealed from the ensuing judgment and from an order denying his motion for a new trial.

It appears that on May 10, 1932, a Mexican named B. Gomez was living with the appellant in a one-room house on the bank of the Alamo River, near the city of Calipatria. The appellant admits that some time on the afternoon of that day he shot and killed Gomez, claiming, however, that the act was done in self-defense. At the time of the shooting Williams and Kloss were present, as was also one John Robertson, although he was asleep at the time. All of the parties had been drinking home brew and, according to the testimony of the three defendants, just before the shooting occurred the appellant ran out of the house with a rifle in his hand pursued by Gomez armed with a knife. The appellant ran to the back of a car standing a few feet from the house and about the time Gomez reached the front of the car and turned around, the appellant fired the fatal shot. After Robertson awoke he was told of the shoot-

ing. One of the three parties, other than appellant, although there is a conflict in the evidence as to which one, threw the body of Gomez over the bank, where it dropped twenty feet below to a point near the river's edge. It is undisputed that Kloss and Williams then put the body in the river, floated it downstream some four hundred feet and there attached weights to the neck and feet by means of baling wire, leaving the body under water. There is evidence that the parties continued drinking that night and the next day, and that on the next day all of the parties started to leave the place for the purpose of informing officers of the shooting but were too drunk to drive a car, although Robertson testified that he was ordered not to leave by the appellant. About noon on May 12th, Robertson left the place and immediately telephoned an officer, whereupon several officers went to the scene, finding the three defendants there. The officers then went down to the river where they found a pool of blood with marks in the sand indicating that an object had been dragged into the water. One of the officers waded downstream about four hundred feet and in so doing walked against the body, which was clear out of sight and about fifteen or twenty feet from the edge of the water. Footprints were found along the bank and in the mud through the course of this four hundred feet, which compared with the shoes taken from the three defendants respectively. An autopsy disclosed that the cause of death was a bullet wound in the head; that the bullet entered about four inches back of the left ear and slightly below and came out at the left nostril, going straight through without upward or downward course; and that death must have been instantaneous. Other portions of the evidence will be later referred to.

The first assignment of error is that the court erred in denying appellant's motion to set aside the indictment and a plea in bar entered thereto. This is based upon the fact that a prior indictment against these defendants charging them with this crime was returned by the grand jury on May 17, 1932; that on May 20, 1932, on motion of the district attorney, this indictment was set aside upon the ground that there had been discovered additional evidence which should be submitted to the grand jury; and that the case was ordered resubmitted to the same grand jury, which

166

was still in session, the minutes showing that the order was based on the ground of newly discovered evidence. On May 23d another indictment was returned by the grand jury upon which the defendants were later tried. The appellant maintains that the dismissal of the first indictment was a bar to this proceeding and that the resubmission of the matter to the grand jury was unauthorized by law. It fully appears that the dismissal of the first indictment and the resubmission of the matter was done upon the ground of newly discovered evidence. The new evidence referred to related to the discovery of a knife which had been found behind some wall board in the house occupied by appellant, which new evidence tended to support appellant's contention of self-defense and might have been most beneficial to him. We think no error is shown in ordering this resubmission and that a further prosecution in the case was not barred (Pen. Code, secs. 1385, 1387; *People* v. *Head,* 105 Cal. App. 331 [288 Pac. 106]).

■ The second point raised is without merit, it being urged that on the first adjournment after the taking of evidence began, while the record shows that the jury was "excused with the usual admonition of the court", there is nothing in the record to show what that admonition was or that the jury had ever heard it. The transcript shows that the jury had been fully and completely admonished in accordance with section 1122 of the Penal Code, and in the usual form, at least eight times on the preceding two days.

■ It is next contended that the court erred in a number of rulings on the admission of evidence, which will be briefly treated in order. The first relates to an objection sustained on the ground that the question had been previously answered. The record shows that a question of the same import, and almost identical in form, had been previously asked and fully answered, the matter taking up more than a page in the transcript. ■ The second objection is to the refusal of the court to strike out a portion of the testimony of the witness Robertson concerning a conversation he had with the defendant Williams. This was offered and received as binding upon Williams only and the jury was properly instructed in reference thereto, and it neither appears that error was committed nor that the

appellant has a right to complain. ▆ The third matter complained of is that an objection to a question was sustained on the ground that it was argumentative and that it had been asked and answered. It not only appears that the question, as apparently intended, had been asked and answered, but, in fact, there was no question, the purported question being merely a statement which could not be construed as other than argumentative. The fourth claim, that a question had not been previously answered, although an objection on that ground was sustained, is not borne out by the record. In the fifth ruling attacked, an objection to a question was sustained on the ground that it was indefinite, argumentative and unintelligible. Each of these objections was well taken. No reason is given for the sixth complaint made and the same may be disregarded. ▆ In the seventh specification the appellant complains of the fact that the court allowed a witness, on redirect examination, to explain certain testimony he had previously given. No authority is cited and no reason appears why the explanation as allowed was not proper under the circumstances appearing. ▆ Finally, a lengthy argument is presented to the effect that objections were sustained to two questions which prevented the appellant from fully cross-examining a witness, it being argued that various portions of this witness' testimony demonstrate that he was utterly unworthy of belief. The questions asked related only to whether certain questions had been asked of this witness before the grand jury. The matter complained of could only go to the impeachment of the witness, and no foundation was laid for this purpose, although it appears the appellant had a transcript of the proceedings before the grand jury. It also appears that the particular questions complained of referred only to trivial matters and that the court permitted a full and complete cross-examination of this witness, during which the entire situation upon which the appellant bases his arguments was brought out.

▆ Appellant next complains of the refusal of the court to advise the jury to acquit all of the defendants and of the denial of a motion made by him to strike out all of the testimony ''as to what happened after the deceased was shot by the defendant Hatfield''. It is argued that there was no evidence to connect Kloss and Williams with the

killing and that the denial of this motion left evidence in the record which was prejudicial to appellant. It may first be observed that even where such an advisory instruction is given, the jury are not compelled to bring in a verdict of not guilty (Pen. Code, sec. 1118). In addition, the motion as made was much too broad, as it included evidence of the acts and conduct of the appellant after the shooting and statements made by him, which clearly should not have been stricken from the record. This contention is based upon the appellant's construction of the evidence as showing that he had nothing to do with disposing of the body of the deceased. On the other hand, there was some evidence tending to connect the appellant with the disposition of the body, namely, the evidence of footprints in the mud along the river which fitted the appellant's shoes. While the appellant tried to establish that Kloss had worn his shoes at the time the body was disposed of, there was evidence that the various tracks along the river fitted the shoes of all three of the defendants, and a question of fact was presented for the jury. While the testimony of Kloss and Williams, if believed, was sufficient to show that neither of them fired the shot which killed the deceased, all of the facts and circumstances justified the submission to the jury of the question of their connection with the crime as principals under section 31 of the Penal Code.

It is next urged that the evidence is not sufficient to show that any crime was committed but conclusively discloses a case of shooting in self-defense. While portions of the testimony of the defendants Kloss and Williams, if believed, would justify such a conclusion, the record contains other evidence, including a part of that given by Kloss and Williams, which justifies a contrary conclusion. The deceased was shot squarely in the back of the head, a circumstance not supporting the appellant's version of the affair. There were many inconsistencies in the evidence given by the defendants, which we need not take the space to discuss, which could well have caused the jury to question certain portions of their evidence and to draw from other portions inferences different from those drawn by the appellant. Kloss testified that as the two ran from the house the appellant ran to the back end of the car standing near, and the deceased ran to the front end of the car. He

then testified, "Ben (the deceased) was going back and Joe (the appellant) turned and headed him off from getting around the car." He also testified that the appellant ran to the southeast corner of the car and then turned and came back and that the deceased "just turned to go around the other way". He then expressed the conclusion that the deceased had turned the other way to meet the appellant, but from this evidence, especially in view of the context, the jury could well have drawn a contrary inference. Again, this witness testified: "I saw him (the appellant) go around the corner and the Mexican turned and he shot," after which he testified that the Mexican had turned and started around the west side of the car at that time. Since the deceased had turned before the shot was fired, and was shot directly in the back it is a reasonable inference that while he was facing the appellant just before the shooting, he had turned and was proceeding the other way before the shot was fired. Williams, after testifying that the appellant ran "past the car and in behind old man Robertson's coupe", and that the deceased was pursuing him with a knife, testified: "Just before the Mexican got to the car he stopped and he started to turn and about the time he turned or before he turned a shot was fired and he dropped right then." On cross-examination he was asked whether the Mexican was going away from appellant at the time the shot was fired. He replied: "I could not say he was going away. He was just turning about, something like that (indicating)." If the testimony of these witnesses that the deceased was pursuing the appellant is to be believed at all, the fact that he was shot in the back of the head indicates that he had desisted and turned away and the evidence as a whole justifies the inference that this is what occurred. The entire situation presents a question of fact for the jury and the evidence supports the verdict. It may also be mentioned that Robertson testified that after he awoke on the day of the shooting, Kloss told him of the affair in the presence of the appellant, showed him a knife he said he had picked up outside and said: "We must—you and I and Williams saw this. Joe killed him in self-defense. We must say that."

██ The appellant next attacks a number of instructions given. Three instructions on the matter of principals and

accessories are first criticised as "emphasizing this point" and also indicating to the jury that the appellant was guilty of any acts committed by Kloss and Williams after the death of the deceased "notwithstanding the fact that there was no showing whatsoever that Hatfield participated in these acts". As we have already pointed out, there was evidence tending to show that Hatfield participated in the disposition of the body. The instructions correctly set forth the law, were necessary because of the evidence relating to the various defendants, the point was not unduly emphasized, and we are unable to see how any possible injury to the appellant could have been caused thereby. ▮ It is next urged that in three instructions on circumstantial evidence the court assumed the guilt of the appellant. The contention is in no way borne out by the record. Three instructions are then attacked on the ground that they were not justified by the evidence. They all relate to one phase of the issue of self-defense and are justified by the fact that the deceased was shot in the back, as well as by a number of other portions of the evidence with the reasonable inferences therefrom.

▮ Complaint is next made of the court's refusal to give an instruction asked for by the appellant, to the effect that a person cannot be punished for a crime committed by him without his being conscious thereof. Apparently this is based upon the theory that the appellant was at the time too drunk to know what he was doing. The appellant's own testimony of what occurred at the time was sufficient to justify the refusal of this instruction, and the court did instruct the jury in reference to the matter of intoxication. We find nothing erroneous or missing along this line. ▮ The refusal to give certain other instructions, which refusal was based upon the statement that they were covered by other instructions, is assigned as error. All of these matters were fully and completely covered in other instructions given with the exception of one, which was based upon a section of the code which has been held to be unconstitutional.

We find no errors in the record justifying a reversal and the judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.