[Crim. No. 1513.   Fourth Dist.   Aug. 13, 1959.]

THE PEOPLE, Respondent, v. ERNEST CALDERA,
Appellant.

Thomas T. Anderson, under appointment by the District
Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged, tried and convicted of the crimes of assault with a deadly weapon, with intent to commit murder (violation of Pen. Code, § 217), and burglary in the first degree (violation of Pen. Code, § 459). Defendant appeals from the judgment of conviction and from the order denying defendant's motion for a new trial.

In general effect the prosecution evidence showed the following: Defendant was the husband of Angelina Navarro Caldera. They were separated and an interlocutory decree of divorce had theretofore been rendered. Angelina lived with her four small children in an apartment in the rear of her mother's home, near Blythe, California. On April 13, 1958, Angelina went to a dance in Arizona with Mr. and Mrs. Juan Gonzales. Defendant was present at the dance and some unpleasantness occurred, including a threat of personal harm by defendant toward Angelina. Angelina stated that the defendant was intoxicated but not as bad as she had seen him on other occasions. The exact time when she noticed the intoxication and the degree of intoxication were not described by her. Angelina left the dance before midnight and returned to her home near Blythe. Apparently at some time before midnight, after she had gone to bed, defendant broke through a window of her bedroom, threw her to the floor and stabbed her with a knife in seven places, one of which stabs penetrated her chest cavity and lung. During the time she was on the floor defendant uttered threats that he was going to kill her. Mrs. Higuera (Mrs. Caldera's mother) heard the commotion, the scream of her daughter, calls for help, and the cries of the 4-year-old son of "Grandma, Grandma, Daddy kill mama." Mrs. Higuera broke the screen, unlocked the door, pulled defendant away from Mrs. Caldera and shouted "Get the shot gun," whereupon defendant ran away. Some two hours or so later, at about 2 a. m., on the 14th, defendant borrowed money from a friend without explanation as to why he needed it. At about the same time, he telephoned his mother and asked her to send his valise and money to Mexicali or to Calexico. Later that morning he quit his job and left that neighborhood without attempting to obtain his money and personal effects from his home.

Defendant's defense was alibi and that he did not do any

of the acts charged as a part of the crime. He did not offer the defense of intoxication nor did he claim that at any time during the period when the offense was alleged to have been committed he did not have full possession of his mental faculties. He never even mentioned intoxication.

Defendant's first contention is that the trial court committed prejudicial error in giving an instruction that voluntary intoxication was not, of itself, a defense to a criminal charge. In the case at bar not one word of testimony even touching the subject of intoxication was offered by any witness for the defense nor by any other witness, except one lone comment by Angelina that at some unspecified time during the dance he was to some undescribed degree intoxicated. However, he danced three times with her and several times with other ladies and talked with no notable difficulty. Counsel for defendant did not question the witness Angelina at all on this point. In fact, he asked no questions of any witness on the subject of intoxication. It is perfectly clear from our reading of the entire record that the issue of intoxication was not at any time during the presentation of evidence intended by the defendant to be presented as an issue in the case. Therefore, in the face of consistent abstinence of any questioning on this subject by either counsel (after the one lone reference thereto in the testimony of Angelina Caldera), and considering the time element in that reference (it was some hours before the alleged offense) and the physical and speech activities of defendant thereafter and before the crime was committed, we must hold that the issue of intoxication was never tendered by the defendant, and that under the particular circumstances here present the evidence of intoxication was insufficient to compel the question to be submitted to the jury. (*People* v. *Price,* 207 Cal. 131, 133 [1] [277 P. 316] ; *People* v. *Hatfield,* 129 Cal.App. 162, 170 [12] [18 P.2d 366] ; *People* v. *Owens,* 79 Cal.App.2d 290, 299 [9] [179 P.2d 401] ; *People* v. *Turville,* 51 Cal.2d 620, 633 [7] [335 P.2d 678].) The case of *People* v. *Coyne,* 92 Cal. App.2d 413 [206 P.2d 1099], offers no satisfactory analogy because in that case both the testimony and defense offered was clearly one of intoxication. The case of *People* v. *Neetens,* 42 Cal.App. 596 [184 P. 27], cited by defendant, is not analogous for two reasons. First, there is no discussion therein of a tender of an issue by defendant nor a forced tender of the issue by the whole evidence presented. We must, therefore, presume that in that case there was, in fact, a tender of the issue. Second, as

pointed out therein that case, unlike the case at bar, involved a crime in which there were no other included degrees or offenses to which the provisions of the instruction complained of could have applied. We are satisfied that in the case at bar the instructions on intoxication were surplusage and should not have been given, but we are unable to discern how they could have affected the result and we find no prejudicial error.

The instruction concerning flight was correctly given. As hereinbefore pointed out, the defendant borrowed money from a friend in the middle of the night, telephoned his mother to forward his money and valise to a distant address, quit his job the following morning, and left the community without going back to his home to pick up his personal effects. This evidence was amply sufficient to support the giving of the instructions on flight, leaving to the jury the question of fact as to whether or not the factor of flight was shown. The case of *People* v. *Fremont*, 22 Cal.App.2d 292 [70 P.2d 1005], presents no analogy for, in that case, there was no factual evidence which could have reasonably justified an inference that defendant was in flight.

It is also clear from an examination of the record that the court fully informed the jury on the subject of specific intent as an element of each charge. The repetition of a subject once covered in the instructions is not required. (*People* v. *Geibel*, 93 Cal.App.2d 147, 176 [21] [208 P.2d 743] ; *People* v. *Steccone*, 36 Cal.2d 234, 240 [7] [223 P.2d 17].)

An examination of the whole record convinces us that the defendant was accorded a full and fair trial and that the jury was fully and fairly instructed on all issues supported by the evidence.

The judgment and order denying the motion for a new trial are affirmed.

Griffin, P. J., and Mussell, J., concurred.