Elmer Anthony MERRILL and Floyd Charles
Griffiths, Appellants,

v.

STATE of Alaska, Appellee.

No. 688.

Supreme Court of Alaska.

Feb. 14, 1967.

John R. Roderick and Robert M. Libbey, Anchorage, for appellants.

Warren C. Colver, Atty. Gen., Juneau, Thomas E. Curran, Dist. Atty., William H. Fuld, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

In this appeal appellants raise several important questions of first impression re-lating to preliminary hearings and grand jury proceedings. We affirm the judgments and commitments which were entered by the superior court.

On June 14 and 15, 1965, complaints were filed in the district court[1] at Anchorage, Alaska, charging appellants with the crime of robbery.[2] On the basis of these complaints, warrants for appellants' arrests were issued by the district judge. On June 16 appellants were apprehended at a point on the Richardson Highway in the vicinity of the community of Delta Junction. Appellants were arraigned before the district court in Fairbanks and then transported to Anchorage for further proceedings. Upon their return to Anchorage, appellants requested District Judge L. Eugene Williams to appoint counsel to represent them at preliminary hearing. While the matter was still pending in the district court, appellants moved the superior court to furnish counsel for them in regard to their forthcoming preliminary hearing. Both courts declined to appoint counsel for appellants.

At the preliminary hearing held on July 7, 1965, Joseph McClain, the victim of the robbery, testified as to the commission of the crime but was unable to identify either appellant as its perpetrator. The district judge also heard testimony from James Glenn, an accomplice, who identified appellant Griffiths as the one who actually committed the robbery and further identified appellant Merrill as an additional accomplice to the crime. At this hearing appellants' request that they be accorded the right to confront two additional witnesses, namely, Officer William Nix of the

1. SLA 1966, ch. 24, § 3, effective July 1, 1966, states:
   Wherever the title district magistrate court appears in the law of this state, it shall be read as district court of the State of Alaska. Wherever the title district magistrate appears in the law of this state, it shall be read as district judge and wherever the title deputy magistrate appears in the law of this state, it shall be read as magistrate.
   Supreme Court Order No. 82 provides for a similar change in these titles as they appear in the rules of court procedure and in court orders.

2. AS 11.15.240 defines the crime of robbery in the following manner:
   A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

Alaska State Police, the complainant, and Sergeant Malone of the Alaska State Police, was denied.[3]

At the conclusion of the July 7, 1965, preliminary hearing appellants were bound over to the grand jury. On July 13 appellants were indicted for robbery.[4] The superior court then appointed Robert M. Libbey to represent appellants. Mr. Libbey filed a motion to stay the proceedings in the superior court and for a "full, lawful and immediate preliminary examination."[5] Thereafter, the prosecutor and defense counsel informed the superior court that they had agreed upon a disposition of appellants' motion for stay and for preliminary hearing. On the basis of counsels' agreement, Superior Court Judge Ralph E. Moody entered a stay and ordered a preliminary hearing "wherein the defendants may be represented by their appointed counsel, Robert M. Libbey, and wherein the defendants may examine Joseph McClain, James Glenn, Sergeant William Nix, and Officer Malone." Pursuant to this order, a further hearing was held before District Judge James A. Hanson on September 24, 1965.[6] At the conclusion of this hearing Judge Hanson declined to rule on the previously determined question of whether

there was probable cause to bind appellants over to the grand jury.

Out of these somewhat unusual circumstances, appellants assert they were deprived of their constitutional rights at the preliminary hearing of July 7 by the courts' refusals to appoint counsel for them.[7] Disposition of this contention requires analysis of several opinions of the Supreme Court of the United States and of the nature of the preliminary hearing contemplated by our Crim.R. 5(d). Initially, we observe that appellants have given Gideon v. Wainwright[8] a more expanded interpretation than its holding indicates. Appellants argue that *Gideon* establishes that "all indigent defendants have a fundamental right to counsel in criminal proceedings whether in the Federal or State Courts." *Gideon* left open the precise question we are asked to determine here. In *Gideon* it was held that the 6th and 14th amendments require that counsel be appointed for indigents in felony trials in state courts.[9] More pertinent to the issue here is appellants' reliance on the Supreme Court of the United States' decisions in Hamilton v. State of Alabama[10] and White v. State of Maryland.[11]

In *Hamilton* the Supreme Court reversed appellant's conviction of a capital offense

3. Alternatively, appellants moved that they be furnished with any written statements the officers had made.

4. In a second count appellant Griffiths was separately charged with the crime of assault with a dangerous weapon in violation of AS 11.15.220.

5. In support of this motion appellants emphasized the fact that they were denied the assistance of appointed counsel; that they lost their right to be discharged from custody; that they were denied the opportunity of determining whether there was any corroborating evidence (and the character of such evidence) of the accomplice Glenn's testimony; and that they were denied the opportunity, under Crim. R. 5(d) (1) [b], to examine Officers Malone and Nix for the purpose of demonstrating Glenn's lack of credibility.

6. This hearing carried over to September 27, 1965.

7. Appellants assert that the denial of court appointed counsel at preliminary hearing violated their rights under article I, § 7 of the Alaska constitution which provides in part: "No person shall be deprived of life, liberty, or property, without due process of law." Appellants also cite article I, § 11 of the Alaska constitution which states in part: "In all criminal prosecutions, the accused * * * is entitled * * * to have the assistance of counsel * * *." In this regard appellants also rely on the similar provisions of the sixth amendment to the United States Constitution.

8. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

9. Id. at 339, 342–343, 83 S.Ct. 792, 9 L. Ed.2d at 802, 804.

10. 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

11. 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

in an Alabama court where there had been a denial of counsel at the time of appellant's arraignment. In reversing, the Supreme Court said, "Arraignment under Alabama Law is a critical stage in criminal proceedings." [12]

Two years later the Supreme Court, in *White*, again had the opportunity to speak on this issue. At his preliminary hearing petitioner had pled guilty to a capital offense when he was not represented by counsel. Counsel was subsequently appointed for him and at his arraignment pleas of "not guilty" and "not guilty by reason of insanity" were entered. During the trial petitioner's plea of guilty, which had been made at the preliminary hearing, was introduced into evidence against him. In holding that the conviction must be set aside under *Hamilton*, the Supreme Court stated:

> Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a stage as arraignment under Alabama law. For petitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel.

> We repeat what we said in Hamilton * * * that we do not stop to determine whether prejudice resulted: 'Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.' [13]

Further illumination on the question of whether there is a constitutional right to counsel at preliminary hearings is provided by the Supreme Court's subsequent decision in Pointer v. State of Texas.[14] In this case the Supreme Court said:

> [W]e do not find it necessary to decide * * * whether failure to appoint counsel to represent him at the preliminary hearing unconstitutionally denied him the assistance of counsel within the meaning of Gideon v. Wainwright * * *. In making that argument petitioner relies mainly on White v. State of Maryland * * * in which this Court reversed a conviction based in part upon evidence that the defendant had pleaded guilty to the crime at a preliminary hearing where he was without counsel. Since the preliminary hearing there, as in Hamilton v. State of Alabama * * * was one in which pleas to the charge could be made, we held in White as in Hamilton that a preliminary proceeding of that nature was so critical a stage in the prosecution that a defendant at that point was entitled to counsel. But the State informs us that at a Texas preliminary hearing such as is involved here, pleas of guilty or not guilty are not accepted and that the judge decides only whether the accused should be bound over to the grand jury and if so whether he should be admitted to bail. Because of these significant differences in the procedures of the respective States, we cannot say that the White case is necessarily controlling as to the right to counsel. Whether there might be other circumstances making this Texas preliminary hearing so critical to the defendant as to call for appointment of counsel at that stage we need not decide on this record and that question we reserve.[15]

From *Pointer* it is clear that the Supreme Court of the United States has

12. 368 U.S. at 53, 82 S.Ct. at 158, 7 L.Ed. 2d at 116. At arraignment appellant had pled not guilty. The Supreme Court noted that (under Alabama law) at the time of arraignment the defense of insanity was required to be pled or it became unavailable; that at this point pleas in abatement must also be made; and that motions directed to the method by which the grand jury was selected had to be made at the time of arraignment.

13. 373 U.S. at 60, 83 S.Ct. at 1051, 10 L. Ed.2d at 194.

14. 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965).

15. Id. at 402–403, 85 S.Ct. at 1067, 13 L. Ed.2d at 925–926.

**690**

not interpreted the federal constitution as mandating the appointment of counsel at all preliminary hearings. It is only when the preliminary hearing is in the nature of a "critical stage" in regard to the particular jurisdiction's criminal proceedings that a defendant has a constitutional right to court appointed counsel. We adopt a similar construction of Alaska's constitution.[16]

We therefore turn to the ancillary question of whether the preliminary hearing, which was held on July 7, constituted a "critical stage" in the proceedings held below. The preliminary hearing contemplated by our Crim.R. 5(d) is, in its essential outlines, similar to the type of preliminary hearing called for under Fed.R.Crim.P. 5(c). Under our rule of criminal procedure which governs preliminary hearings, it is explicitly provided that "The defendant shall not be called upon to plead."[17] In the event the defendant does not waive preliminary examination, the rule states "it shall take place within a reasonable time". If at the conclusion of preliminary hearing "it appears to the [district judge] * * * that a crime has been committed and that there is sufficient cause to believe that the defendant is guilty of that crime, the [district judge] * * * shall enter an order holding the defendant to answer to the crime and committing him to proper custody."[18]

Our rule differs from the federal rule in that it permits the defendant "to give any explanation he may think proper of the circumstances appearing in the evidence against him and to state any facts which [he] * * * might think will tend toward his exculpation."[19] In this regard Crim.R. 5(d) (1) [d] requires that the district judge inform "the defendant that he is not re-

16. See White v. State of Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193, 194 (1963).

17. The full text of Crim.R. 5(d) (1) reads as follows:

*General.* The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the [district judge] * * * shall forthwith hold him to answer in the court in which the offense is triable and shall admit the defendant to bail as provided by law and these rules. If the defendant does not waive examination, it shall take place within a reasonable time, and the proceedings thereon shall be as follows:

[a] The [district judge] * * * shall read to the defendant the complaint and any supporting statements and affidavits.

[b] At the request of the defendant, and without cost to him, the [district judge] * * * shall subpoena the complainant and any witnesses examined prior to the filing of the complaint. The production of other witnesses requested by the defendant shall be governed by Rule 17 so far as applicable.

[c] The plaintiff must first present the evidence in support of its case. All witnesses must be examined in the presence of the defendant and may be cross-examined by him.

[d] When the plaintiff has concluded the presentation of its evidence, the [district judge] * * * shall inform the defendant that it is his right to make a statement for the purpose of answering the charge and explaining the facts alleged against him. The [district judge] * * * shall also inform the defendant that he is not required to make any statement and that his failure to make a statement cannot be used against him at the trial.

[e] After the defendant has made his statement or has expressed a desire not to make a statement he may present evidence in support of his case. Witnesses produced and examined by the defendant may be cross-examined by the plaintiff.

[f] The testimony of witnesses need not be reduced to writing, but shall be electronically recorded if recording equipment is available.

18. Crim.R. 5(d) (5). See also Crim.R. 5(d) (4) which provides:
*Discharge of Defendant.* At the completion of the preliminary examination, if it appears to the [district judge] * * * that a crime has not been committed or that there is insufficient cause to believe the defendant guilty of a crime that was committed, the [district judge] * * * shall enter an order discharging the defendant.

19. Crim.R. 5(d) (3) [b].

quired to make any statement and that his failure to make a statement cannot be used against him at the trial." It is further provided that any statement the defendant does make "is competent testimony to be presented to the grand jury, and may be offered in evidence against the defendant at the trial." [20] We note that no such statements were made by either appellant at any of the hearings held in the district court. It is also of significance that no pleas were entered by the appellants at any time during these hearings in the district court.

■ In light of the provisions of Crim.R. 5(d) and the character of the proceedings in this case, we hold that the preliminary hearing of July 7, 1965, was not a "critical stage," and that the courts did not err in failing to appoint counsel for appellants.

We consider United States ex rel. Cooper v. Reincke [21] apposite here. There the Second Circuit held the failure to appoint counsel at a Connecticut preliminary hearing was not error. In distinguishing *White* and *Hamilton* the court said:

The Connecticut hearing in probable cause has been accurately characterized as a mere ' "inquest" made to determine the existence of probable cause, and to discharge the accused if none exists,' * * * The finding of probable cause is not final and it cannot be used against an accused on the trial * * *. The hearing in probable cause and appearance before a judge or committing magistrate can be readily dispensed with by the State since an original information may be filed * * *.[22]

20. Crim.R. 5 (d) (3) [c]. As to this statement of the defendant Crim.R. 5(d) also provides:

(3) *Statement of Defendant.*

[a] *Waiver.* If the defendant waives his right to make a statement, the [district judge] * * * shall make a written memorandum of that fact in the record of the proceedings.

[b] *Making Statement.* If the defendant chooses to make a statement, the [district judge] * * * must ask the defendant his name and age, his place of birth, his place of residence and length of time that he has resided at such place, and his business or occupation. The [district judge] * * * shall then ask the defendant to give any explanation he may think proper of the circumstances appearing in the evidence against him and to state any facts which the defendant might think will tend toward his exculpation. No other questions shall be allowed.

The defendant's statements and answers to the [district judge's] * * * questions shall be reduced to writing or shall be electronically recorded. If the defendant's statement is reduced to writing the defendant shall examine the same and make whatever corrections or additions he deems necessary to make such statements and answers conformable to what he declares to be the truth. The defendant shall sign the statement. If he refuses to sign the statement, his reason for such refusal must be reduced to writing by the [dis-

trict judge] * * *. The [district judge] * * * shall then endorse on the written statement that the defendant was informed of his rights as provided in this rule and that after being so informed he made the statement. The [district judge] * * * shall sign the statement and certify it as being correct.

If the defendant's statement is electronically recorded, the [district judge] * * * shall ask him at the conclusion thereof to audibly state whether or not the statement is the truth. The [district judge] * * * shall then audibly record the fact that the defendant, prior to making the statement, had been informed of his rights as required by the law and rules of court and that after being so informed he made the statement. Once the defendant has begun a statement which is electronically recorded, the recording equipment shall not be turned off for any reason until the statement is completed.

21. 333 F.2d 608, 611 (2d Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 205, 13 L. Ed.2d 181 (1964).

22. Compare our Crim.R. 7(a) which reads:

Use of Indictment and Information. An offense which may be punished by imprisonment for a term exceeding one year shall be prosecuted by indictment, unless indictment is waived. Any other offense may be prosecuted by indict-

The following authorities have also concluded that the particular preliminary hearing in question was not a critical stage: Chester v. People of State of California, 355 F.2d 778, 780 (9th Cir. 1966); State v. Schumacher, 97 Ariz. 354, 400 P.2d 584 (1965); Commonwealth v. Watkins, 398 S. W.2d 698, 700 (Ky.), cert. denied, 384 U.S. 965, 86 S.Ct. 1596, 16 L.Ed.2d 677 (1966); Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A.2d 810, 812 (1965); Summers v. Rhay, 67 Wash.2d 889, 410 P.2d 608, 610, cert. denied, Summers v. State of Wash., 384 U.S. 944, 86 S.Ct. 1473, 16 L.Ed. 2d 543 (1966).[23]

■ Appellants' second assertion of error regarding the July 7, 1965, preliminary hearing is that they were deprived of their constitutional right to confront the witnesses against them by virtue of the district judge's ruling which precluded examination of Officers Malone and Nix.[24] Appellants' argument is grounded on Pointer v. State of Texas.[25] They interpret *Pointer* as holding "the accused has the fundamental constitutional right to confront and cross-examine the witnesses against him *at the preliminary hearing,* and if he is denied this fundamental right *at the preliminary hearing* he is denied his constitutional rights, including due process of law." We disagree.

*Pointer* held that the confrontation guarantee of the sixth amendment is enforceable against the states under the 14th amendment according to the same standards employed in the federal system. In that case the defendant had been confronted by a government witness at a preliminary hearing at which defendant was not represented by counsel. Although petitioner's codefendant did cross-examine the witness, petitioner did not. At trial the unavailability of the government witnesses was shown and a transcript of his preliminary hearing testimony was admitted. On these facts the Supreme Court said:

> Because the transcript of [the] * * * statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips, its introduction in a federal court in a criminal case against Pointer * * * amounted to de-

---

ment or information. An information may be filed without leave of court.
Under this rule felony prosecutions can be initiated in the superior court without the necessity of filing a criminal complaint and holding a preliminary hearing thereon.

23. We also note that by virtue of Order No. 86 of the Supreme Court of Alaska, which became effective on September 15, 1966, district judges are now empowered to appoint counsel for indigent defendants in felony cases. Under former Magis.Crim.R. 1(j), Crim.R. 39(b) was expressly made inapplicable to proceedings in the district court. Order No. 86 made Crim.R. 39(b) applicable to proceedings in district courts.
Crim.R. 39 reads in full as follows:
  Appearance by Counsel.
  (a) Informing Defendant of Right to Counsel. If the defendant appear for arraignment or trial without counsel, the court shall advise him of his right to have counsel, and he must be asked if he desires the aid of counsel.

  (b) Assignment of Counsel. If the defendant states that he desires the aid of counsel and is unable to employ counsel, and upon his making affidavit that he is without sufficient funds to employ counsel, the court shall assign counsel to represent him at every stage of the proceedings, who shall be allowed such fee for his services as may be fixed by the supreme court, to be paid by the state on approval by the administrative director. In the absence of a request by the defendant, the court, in its discretion, may also assign counsel when it deems it in the best interests of justice to do so.

24. Article I, § 11 of the Alaska constitution provides in part: "In all criminal prosecutions, the accused * * * is entitled * * * to be confronted with the witnesses against him * * *." See also the sixth amendment to the United States Constitution.

25. 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965).

nial of the privilege of confrontation guaranteed by the Sixth Amendment.[26]

The facts of the case at bar are distinguishable. At the July 7 preliminary hearing appellants requested that Officers Malone and Nix be summoned so they could examine them. These police officers had been present at the interrogation of accomplice Glenn and appellants wanted the opportunity of examining them for the purpose of demonstrating that Glenn was under duress when he made his statement to the police, and to show the consequent unreliability of Glenn's testimony. As we related previously, this request was denied although at the "preliminary hearing" of September 24, which was held subsequent to the return of the indictment in this case, appellants were given the opportunity to examine Officers Malone and Nix. No transcript of any testimony of either Malone or Nix was introduced into evidence at appellants' trial. We are therefore of the opinion that *Pointer* is inapplicable to the factual situation of the case at bar.[27]

This holding is not completely dispositive of appellants' second allegation of error. It is also necessary to determine whether the district judge's ruling in regard to the request to call Officers Malone and Nix violated the provisions of Crim.R. 5(d) (1) [b] [28] which provides:

At the request of the defendant, and without cost to him, the [district judge] * * * shall subpoena the complainant and any witnesses examined prior to the filing of the complaint. The production of other witnesses requested by the defendant shall be governed by Rule 17 so far as applicable.[29]

Since Officer Nix was the complainant in each of the complaints which were filed against appellants, it was error on the part of the district judge to have refused appellants' request to subpoena him at the July 7 preliminary hearing.[30] Our study of the entire record in this case has led us to the conclusion that the district judge's denial of appellants' request to call this witness at the preliminary hearing did not affect the character of the trial appellants were accorded, or in any significant way disadvantage or prejudice appellants. Although we are of the opinion that the district

---

26. Id. at 407, 85 S.Ct. at 1070, 13 L.Ed.2d at 928.

27. In McBride v. State, 368 P.2d 925, 926 (Alaska 1962), (Footnotes omitted.) it was stated in regard to the confrontation provision that:

It is true, of course, that an accused is entitled 'to be confronted with the witnesses against him.' But the main and essential purpose of this provision is to secure for the accused the right of cross-examination. McBride had exercised this privilege by cross-examining the witness at the first trial, and a recording of this was heard by the jury at the second trial when the former testimony was introduced by the state. McBride had been 'confronted' with the witness who testified against him, and therefore he had enjoyed his constitutional right to cross-examine.

28. Magis.Crim.R. 1(j) reads in part as follows: "The provisions of Rule 5, relating to preliminary examination * * * shall not apply." The intent of this portion of the rule is to make the preliminary hearing provisions of Crim.R. 5 inapplicable only to misdemeanor proceedings in the district courts.

29. Crim.R. 17(b) provides in part:

Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness.

30. As to Officer Malone, we have concluded that appellants did not make a sufficient showing under Crim.R. 17(b) and therefore no error was committed in regard to this requested witness at the July 7 preliminary hearing.

judge violated our rule governing preliminary hearings, we hold that such error on the part of the district judge, on this record, does not warrant reversal of appellants' convictions.

This is not to be taken that we will readily condone violations of Crim.R. 5(d)'s requirements regarding preliminary hearings. Important pre-indictment rights of the accused are embodied in this rule of criminal procedure. If the district judge is persuaded that probable cause has not been shown, an accused is entitled to be released. And, if this independent tribunal concludes that the state has not shown probable cause, such determination might well affect the prosecutor's decision as to whether the case should be submitted to a grand jury. A prior determination of lack of probable cause could also be a significant factor in determination of bail in the event an indictment is subsequently returned. In appropriate cases, remedies are available to vindicate these rights.[31]

■ Appellants next specify as error the superior court's denial of their motion to dismiss the indictment. This motion was made on the grounds that the indictment was based on the uncorroborated testimony of an accomplice and was therefore insufficient as a matter of law. Appellants assert that AS 12.45.020 is applicable to evidence produced before a grand jury. This statute appears in chapter 45 of our Code of Criminal Procedure which pertains to trial proceedings. It provides that:

> A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.[32]

Appellants further rely on Crim.R. 6(k), which, where pertinent, reads:

> It is [the grand jury's] * * * duty to weigh all of the evidence submitted. * * * The grand jury ought to find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction by the trier of the offense.

In State v. Shelton,[33] in discussing the Supreme Court of the United States' deci-

---

31. See Blue v. United States, 342 F.2d 894, 900–901 (1194 App.D.C. 315), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L. Ed.2d 964 (1965). That case involved, in addition to Fed.R.Crim.P. 5, the 1960 District of Columbia Legal Aid Act, 2 D.C.Code §§ 2201–2210. In discussing possible remedial alternatives for redress of infirmities in preliminary hearing, the court discussed three possibilities: dismissal of the indictment; reverse the conviction and remand for new trial; and intervention by habeas corpus or mandamus prior to trial. Under the circumstances of that case the court said, in regard to the third alternative, that:

> [W]e conceive [it] to be the remedy best calculated to combine adequate relief to accused persons with the least burden to the Government and the courts. Thus, an accused who is permitted to waive hearing without proper advice or who is wrongfully denied an opportunity to present witnesses in his own behalf will be entitled to an order of release unless a hearing is held, or

to an order reopening the hearing for presentation of further evidence.

The court concluded by stating:

> [W]e cannot find that the Commissioner's failure to accord appellant a meaningful opportunity to elect to have a preliminary hearing, and thereby to acquaint himself in greater detail with the case against him, so handicapped him in his first trial as to require a second.

See Wilson v. Anderson, 118 U.S.App.D. C. 265, 335 F.2d 687, 691 (1964) (dissenting opinion), cert. denied, 381 U.S. 927, 85 S.Ct. 1564, 14 L.Ed.2d 685 (1965).

32. This question was not raised in regard to the three opinions of this court which have dealt with AS 12.45.020. See Thomas v. State, 391 P.2d 18 (Alaska 1964); Braham v. State, 376 P.2d 714 (Alaska 1962); and Oxenberg v. State, 362 P.2d 893 (Alaska), appeal dismissed, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961). These appeals concerned questions relating to corroboration of an accomplice's trial testimony.

33. 368 P.2d 817, 818 (Alaska 1962).

·sion in Costello v. United States,[34] we said, "The issue here is one of sufficiency of the evidence, and not as in Costello, that of competency." [35]

Here we are similarly faced with a question of the sufficiency, rather than that of the competency, of the evidence upon which the indictment was returned. We hold that the testimony of the accomplice Glenn was competent evidence and that AS 12.45.020's evidentiary requirement of corroboration is inapplicable to grand jury proceedings.[36] There is no requirement in either our Code of Criminal Procedure, or in our Rules of Criminal Procedure, that an accomplice's testimony be corroborated before an indictment can be properly returned.

Also of significance in regard to this corroboration contention is that the record indicates the victim of the robbery, Joseph McClain, and Officer Nix testified before the grand jury in addition to the accomplice Glenn. In such circumstances we cannot find that there was a lack of evidence presented to the grand jury which rationally established the facts of appellants' guilt.[37] We hold that the superior court did not abuse the discretion with which it is vested in deciding such motions, when it denied appellants' motion to dismiss the indictment.[38]

▆▆▆ Appellants next argue three specifications of error, all of which relate to the proceedings had before the grand jury. Initially, appellants contend that at the September 24 hearing the district judge erred in denying them "the right to question witnesses at the preliminary hearing as to their testimony before the Grand Jury." We previously pointed out that this hearing of September 24 followed the stipulated dis-

position of appellants' motion for a preliminary hearing, which was made after the indictment had been returned. Although there are indications in the record that respective counsel had previously agreed that the September 24 hearing was to be held as if prior to the return of the indictment, we choose not to rest our decision on this ground. In short, appellants have not persuaded us that any error was committed when they were denied the opportunity to ask questions about the grand jury testimony of the witnesses. We will return to this point subsequently.

Appellants next argue two interrelated specifications of error. Appellants' position is that the superior court committed error when it denied their motion to inspect the minutes or transcript of the proceedings before the grand jury, or in the alternative, to permit defendants to take depositions of the witnesses who testified before the grand jury. The showing made in support of this motion discloses that appellants sought this relief in order to determine whether there was sufficient evidence to sustain the indictment, and further, to ascertain whether any illegally seized evidence had been presented to the grand jury. We hold that the superior court did not err in denying appellants' alternative motion for inspection.

In regard to the secrecy of grand jury proceedings, Crim.R. 6(h) provides:

Disclosure of matters occurring before the grand jury other than the deliberations and the vote of any juror may be made to the prosecuting attorney for use in the performance of his duties. Otherwise, a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when

34. 350 U.S. 359, 362–363, 76 S.Ct. 406, 100 L.Ed. 397, 401–403 (1956).

35. In *Shelton* we left open the question whether an indictment based solely on hearsay is subject to dismissal.

36. Cf. Ex parte Jackson, 6 Alaska 726 (1922).

37. See State v. Shelton, 368 P.2d at 819 where this court stated:

There is a presumption that [the grand jury] * * * acted on sufficient evidence, and Shelton has not sustained his burden of showing that it did not.

38. United States v. Nunan, 236 F.2d 576 (2d Cir. 1956), cert. denied, 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957); Zacher v. United States, 227 F.2d 219 (8th Cir.), cert. denied, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1955).

so directed by the court preliminary to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.[39]

The federal courts have uniformly held that disclosure of grand jury minutes under Fed.R.Crim.P. 6(e) is a matter which is committed to the discretion of the trial judge.[40] Superior court judges are vested with similar discretion in resolving disclosure questions arising under our Crim. R. 6(h). Also pertinent here is the Supreme Court of the United States' opinion in Pittsburgh Plate Glass Co. v. United States [41] where it was said:

As recently as last Term we characterized cases where grand jury minutes are used 'to impeach a witness, to refresh his recollection to test his credibility and the like' as instances of 'particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' United States v. Procter & Gamble [Co.], 1958, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 [1082].

*   *   *   *   *   *

It does not follow, however, that grand jury minutes should never be made available to the defense. This Court has long held that there are occasions, see United States v. Procter & Gamble [Co] * * * when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly 'disclosure is wholly proper where the ends of justice require it.' * * *

The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy.[42]

We are of the view that appellants have failed to demonstrate the existence of a particularized need requiring the disclosure of the grand jury minutes.[43] Pursuant to the stipulation of counsel and the superior court's order, appellants were afforded the right, at the September 24 hearing to cross-examine the three prosecution witnesses who testified before the grand jury prior to making their alternative motion for inspection.[44] We also note that at their trial no effort was made by appellants to obtain a transcript of the grand jury testimony of

39. This rule is substantially identical to Fed.R.Crim.P. 6(e).

40. United States v. Angelet, 255 F.2d 383 (2d Cir. 1958); United States v. Spangelet, 258 F.2d 338 (2d Cir. 1958); United States v. Rose, 215 F.2d 617, 629 (3d Cir. 1954).

41. 360 U.S. 395, 399–400, 79 S.Ct. 1237, 1240–1241, 3 L.Ed.2d 1323, 1326–1327 (1959).

42. In his dissenting opinion Mr. Justice Brennan enumerated the reasons which have been used in justification for grand jury secrecy. These were:
   (1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings.
   Id. at 405, 79 S.Ct. at 1244, 3 L.Ed.2d at 1330.

43. Our jurisdiction has no rule of court or statute which requires pretrial disclosure of grand jury minutes. Compare Cal.Code Ann., Penal § 938.1 (Supp. 1966); State ex rel. Clagett v. James, 327 S.W.2d 278, 282 (Mo.1959).

44. As we have shown, one of the stated purposes of appellants' motion was to determine whether the evidence was sufficient to sustain the grand jury in returning an indictment.

any of these witnesses for impeachment purposes or to test their credibility.[45]

Appellants' contention that they should have been granted the opportunity to inspect the grand jury minutes to determine whether any illegally seized evidence was presented to that body is equally without merit. We have held that the accomplice Glenn's testimony was competent evidence. The record indicates the grand jury also heard testimony from the victim of the robbery and Officer Nix. In such a factual context it would necessitate a high degree of speculation to reach the conclusion that the indictment was based solely on illegally seized evidence. The mere presence of some illegally seized evidence before the grand jury does not invalidate the indictment.[46]

We conclude that no error was committed by the trial judge when he denied appellants' alternative motion for inspection of the grand jury minutes, or to depose the witnesses who testified before the grand jury.[47]

Appellants also have advanced the argument that the trial court's flight instruction was erroneous because it had the effect of taking from the jury the factual issue of whether the flight of the appellants had been shown. The trial court instructed the jury that:

> Flight of the accused, after a crime has been committed, does not create a presumption of guilt. It is, however, a circumstance which may tend to prove consciousness of guilt, and should be considered and weighed by the jury in connection with all the other evidence. The weight to be given evidence of flight depends upon the motives which prompted it, and all of the surrounding facts and circumstances.[48]

Review of the state's evidence demonstrates that a strong showing was made as to the flight of the appellants from the locale of the crime. The only testimony adduced by appellants at the trial was directed toward rebutting the prosecution's evidence of flight. And a significant portion of counsel for appellant's final argument to the jury centered on this flight issue. On this record we hold that the trial court was warranted in giving a flight instruction and that the instruction in question was not erroneous.[49] Nevertheless, we

45. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399–400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, 1326–1327 (1959). See Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, 982–987 (1966) and State v. Shelton, 368 P.2d 817, 819 (Alaska 1962). We further note that at trial appellants were in no way precluded from questioning these witnesses as to their testimony before the grand jury.

46. Orfield, The Federal Grand Jury, 22 F.R.D. 343, 450 (1959). See Zacher v. United States, 227 F.2d 219, 225 (8th Cir.), cert. denied, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1955); United States v. Lydecker, 275 F. 976, 979 (W.D.N.Y. 1921).

47. In regard to the alternative deposition relief requested, the record discloses that appellants did not make a sufficient showing under Crim.R. 15(a), which provides in part:

> When and How Taken. If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents, or tangible objects, not privileged, be produced at the same time and place.

48. This instruction is identical to the flight instruction contained in Seventh Circuit Judicial Conference Committee on Jury Instructions, Manual on Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 586–587 (1963).

49. See State v. McLain, 74 Ariz. 132, 245 P.2d 278, 282–283 (1952); People v. Caldera, 173 Cal.App.2d 98, 342 P.2d 945, 947 (1959).
Note the trial judge also instructed the jury that "Neither by these instructions nor by any ruling or remark which I have made do I or have I meant to indicate any opinion as to the facts."

deem it appropriate to indicate that the flight instruction used by the trial court could have been clarified to more clearly indicate to the jury that they must first find that the evidence does in fact show the flight of an accused.

Appellants' final point is that the trial court erroneously admitted into evidence a .22-caliber revolver in violation of their rights under the Alaska and federal constitutions. Appellants advance three arguments in support of this contention. First, appellants contend that no basis for probable cause was set forth by the complaints and therefore the warrants of arrests were illegal.[50] Second, that the search which led to the seizure of the revolver was more extensive than is permitted as incident to a lawful arrest. Third, that the revolver, being "merely evidentiary," was not subject to seizure in the course of a search incident to a lawful arrest. The record indicates that appellants made a timely motion prior to trial to suppress certain evidence including the revolver and that this motion was denied.[51] The superior court judge determined that the district judge had probable cause to issue warrants for the arrest of appellants, and that the revolver was seized as a result of a lawful immediate search conducted at the time of appellants' arrest. At trial appellants renewed their motion to suppress, which was again denied.[52]

In deciding whether or not the .22-caliber revolver was obtained as the result of an illegal search and seizure,[53] we find it unnecessary to pass upon the question of whether the complaints in question were constitutionally sufficient for purposes of determining the existence of probable cause.[54] Giordenello v. United

---

50. The material part of the complaint, which was filed against appellant Griffiths, reads:

> Floyd Charles Griffiths did wilfully, unlawfully and feloniously, by force and violence and by putting Joseph E. McClain in fear, steal and take from the person of Joseph E. McClain, United States currency of the value of about forty dollars ($40.00).
>
> \*    \*    \*    \*    \*
>
> This Complaint is [based] \* \* \* on statements of Joseph E. McClain that he was robbed at gunpoint and statement of James E. Glenn identifying Floyd Charles Griffiths as the man who committed the robbery.
>
> /s/ William R. Nix
>
> Sworn to and subscribed before me this 14th day of June 1965.
>
> /s/ L. Eugene Williams
> District Magistrate

The charging portion of the complaint against appellant Merrill is substantially the same, except that the last paragraph reads:

> This Complaint is based on the statement by James Albert Glenn that Elmer Anthony Merrill participated in the robbery of the Edgewater Motel and shared in the money obtained during the robbery.

51. See Crim.R. 37(c) which governs motions to suppress evidence.

52. In denying the motion the trial judge found, in part, that "the officers making the arrest had been informed that a warrant was outstanding for the arrest of the defendants on a charge of armed robbery \* \* \*. Moreover, I find that he was authorized to execute a search contemporaneously with a lawful arrest, and that he was looking for weapons at the time he made the search."

53. In Ellison v. State, 383 P.2d 716, 718 (Alaska 1963), it was said:

> Article I, section 14 of the Alaska constitution is the state counterpart of the fourth amendment and contains an even broader guarantee against unreasonable searches and seizures, for it begins: 'The right of the people to be secure in their persons, houses *and other property,* papers, and effects, \* \* \*.'

54. Our Crim.Rules 3 and 4 are similar to Rules 3 and 4 of the Federal Rules of Criminal Procedure. In Giordenello v. United States, 357 U.S. 480, 486, 78 S. Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509 (1958), the Supreme Court said:

> The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by

States,[55] is authority for the proposition that the prosecution may justify appellants' arrest without relying on the validity of the warrants. If appellants' arrests can be validated apart from the questioned warrants, then the revolver, which was seized incident to their arrest, was admissible. In Goss v. State [56] we said:

The search would be unreasonable because made without a warrant, unless the facts were such as to bring this case within an exception to the rule that a search must rest upon a search warrant. [citing Rios v. United States, 364 U.S. 253, 261, 80 S.Ct. 1431, 4 L.Ed.2d 1688, 1693 (1960)] The exception that we are concerned with here is that which recognizes the validity of a search made without a warrant where the search is made incident to a lawful arrest. [citing Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, 739 (1963)] Since the arrest in this case was also made without a warrant, its lawfulness depends on whether it was based on probable cause, which exists if the facts and circumstances known to the officer would warrant a prudent man in believing that

an offense had been or was being committed. [citing Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134, 138 (1959)].

*Goss* is applicable here and we hold that the police officers acted with probable cause when they arrested appellants without a warrant. AS 12.25.030(3) provides that a peace officer may arrest without a warrant "when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it." The superior court judge found,[57] and our review of the record confirms his finding, that the two arresting officers had been informed by a superior officer that warrants had been issued for the arrest of appellants for armed robbery, and that the two suspects were in the area of Paxson Lodge, traveling in a Harold's Rent-A-Truck. We believe that the facts and circumstances known to the officers establishes that they had probable cause to make the arrests.[58]

In Ellison v. State [59] we said:

There seems to be no exact formula for the determination of reasonableness in connection with a search and seizure

a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.

Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964) reiterated the *Giordenello* rule, making it clear that it was made applicable to state proceedings through the 4th and 14th amendments. In that case, the Supreme Court of the United States said:

Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be

disclosed * * * was 'credible' or his information 'reliable.'

55. Giordenello v. United States, supra note 54, 357 U.S. at 488, 78 S.Ct. 1245, 2 L. Ed.2d at 1510–1511. Note: Alternative grounds to legitimatize the arrests were advanced at the trial level.

56. 390 P.2d 220, 223 (Alaska 1964).

57. Note 52 supra.

58. See Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142, 145 (1964), where the Supreme Court said: Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

59. 383 P.2d 716, 719 (Alaska 1963). (Footnote omitted.)

and so each case must be decided on its own facts and circumstances.

In regard to the reasonableness of a contemporaneous search and seizure, the Supreme Court of the United States in Preston v. United States [60] said:

> Unquestionably, when a person is lawfully arrested, the police have the right without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * This right to search and seize without a search warrant extends to things under the accused's immediate control * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested. * * * The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest.

We affirm the trial court's conclusion that the revolver was seized as the result of a reasonable search pursuant to a lawful arrest. The evidence shows that the two arresting officers apprehended appellants at approximately 11 p. m. on an isolated stretch of the Richardson Highway, some 300 miles from Anchorage. After being stopped by the officers' road block, appellants, at gun point, were directed to get out of their vehicle. Appellants were then searched, handcuffed, and placed "spreadeagle on the bridge abuttment." One of the officers then walked back to appellants' truck and through the open door on the driver's side he saw "a shotgun on the floor board, and a pistol laying on the seat." [61] Under these facts we conclude that the search and seizure of the revolver was not too remote in time or place from appellants' arrest. We further hold that the contemporaneous search and seizure, under the circumstances of this record, was reasonable, for the officers were justified in seizing weapons which might be used to effect escape or to assault them.[62] We hold that the superior court properly denied appellants' motion to suppress the revolver.[63]

Affirmed.

60. 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964).

61. Officer Hollar subsequently testified that the .22-caliber revolver was loaded. Although referred to at times as a pistol, it is the weapon which is in question in this appeal.

62. Harris v. United States, 331 U.S. 145, 153–154, 67 S.Ct. 1098, 91 L.Ed. 1399, 1407 (1947).

63. This evidence was in part corroborative of the accomplice Glenn's testimony. Review of the entire record indicates that Glenn's testimony, under the test that was adopted in Oxenberg v. State, 362 P. 2d 893, 897 (Alaska), appeal dismissed 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961), was amply corroborated by evidence other than the .22-caliber revolver in question.