**Alexander Thomas STEVENS, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 873.**

Supreme Court of Alaska.

July 23, 1968.

Donald L. Craddick, Juneau, for appellant.

Ronald G. Birch, Dist. Atty., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

NESBETT, Chief Justice.

The principal question is whether a delay of approximately ten hours in conducting a homicide investigation on premises legally entered by the police in response to an emergency call, is fatal to the constitutionality of the investigation and to the admissibility of the evidence obtained.

Appellant shot and killed Frederick LaViolette during a drinking bout in appellant's home in Hoonah, Alaska in the early morning hours of January 8, 1967. Sam Knudson, Chief of Police of Hoonah, in response to the telephone call of a neighbor, knocked on the door of appellant's home. Appellant's wife opened the door and Knudson entered. No words were spoken by either Knudson or appellant's wife prior to his entry. Appellant was sobbing and advised Knudson that he had shot his "buddy". Knudson arrested and jailed appellant to prevent him from taking his own life, as he was threatening to do. Knudson then returned to appellant's home in the company of Frank See, Mayor of Hoonah. After they had viewed the body and conducted a superficial inspection of the premises Knudson locked the house with a padlock.

Mayor See then telephoned to Corporal Monagle of the Alaska State Police in Juneau. By this time it was three o'clock in the morning. After being advised of what had happened Corporal Monagle ordered that the premises be kept locked. Upon Monagle's advice, appellant's wife, who was hysterical and in the streets of Hoonah, was also confined. At approximately 10 a. m. Corporal Monagle, accompanied by a state trooper and the District Attorney, departed Juneau for Hoonah. Upon their arrival Chief Knudson unlocked appellant's home and the party entered.

The activities of Corporal Monagle and his party consisted of photographing the body and the room, retrieving empty cartridge cases, extracting bullets from their point of lodging, taking measurements for use in preparing a diagram and taking possession of a .45 caliber pistol, cartridge clip and shells. The pistol was found in plain view in the magazine rack in the bedroom with a live shell in the magazine, the trigger cocked and the safety in the "off" position. No search warrant had been obtained. Appellant and his wife were still incarcerated and knew nothing of the entry of the Juneau party into their home.

Appellant's objections to the introduction into evidence of the pistol, empty and live cartridges, bullets, photographs and a diagram were overruled. The case went to the jury on an indictment for second degree murder and a finding of guilty of manslaughter was returned.

Appellant contends that the entry of Corporal Monagle and his party approximately ten hours after Chief Knudson's original entry violated the unreasonable search and seizure provisions of the fourth amendment to the United States Constitution[1] and of article I, section 14 of the Alaska Constitution.[2]

---

1. The fourth amendment states:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. Art. I, § 14 of the Alaska Constitution states:
   The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not

■ Appellant concedes that the original entry of Chief Knudson without a warrant was legal. This is the general rule. In United States v. Barone[3] the majority rule was well stated as follows:

The right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as police officers, and derives from the common law.

In Patrick v. State[4] it was suggested that:

[T]he criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact.

■ Chief Knudson went to appellant's home in response to a call from a neighbor, who had obtained knowledge of the shooting from appellant's children, who had fled the home. Chief Knudson had reason to believe that an emergency existed when he knocked at the door of appellant's home. His entry without a warrant after the door was opened by appellant's wife was made under the same reasonable belief, although no invitation to enter or no direction not to enter was given by appellant's wife. After his legal entry, and upon learning that a homicide had been committed, it became Chief Knudson's duty to conduct an investigation into the circumstances. This duty carried with it the right to inspect the premises.[5]

Had Chief Knudson, or other authorized officials, proceeded without delay to conduct an investigation of the homicide by photographing the body and the room, retrieving empty cartridge cases, extracting bullets from or in line with observable bullet holes, taking measurements and taking the loaded, cocked pistol in possession, no constitutional right of appellant against unreasonable search and seizure would have been violated. None of the evidence was concealed, but was available to investigators on the floors, walls and furniture of the kitchen, bedroom and sitting room where the fighting and shooting occurred.

■ The clear weight of authority is that evidence which is in open view is not the product of a search and that the seizure of such evidence after a lawful entry violates no constitutional right of privacy.[6]

■ We do not believe that the fact that approximately ten hours intervened between Chief Knudson's original legal entry on the premises and the commencement of a full scale police investigation converted what would otherwise have been a legal police investigation into a violation of appellant's constitutional right of privacy. The duty police officer who responds to an emergency call and discovers a homicide is not necessarily a competent officer to conduct the type of investigation necessary to protect the interests of

be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

3. 330 F.2d 543, 545 (2nd Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964).

4. 227 A.2d 486, 489 (Del.1967). See Wayne v. United States, 115 U.S.App. D.C. 234, 318 F.2d 205, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963); Davis v. State, 236 Md. 389, 204 A.2d .76, cert. denied, Davis v. Maryland, 380 U.S. 966, 85 S.Ct. 1113, 14 L.Ed.2d 156 (1965); See also Goss v. State, 390 P.2d 220, 224 (Alaska), cert. denied, Goss

v. Alaska, 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964).

5. United States v. Barone, 330 F.2d at 545.

6. Ker v. State of California, 347 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 744 (1963); United States v. Barone, 330 F.2d 543, 545 (2nd Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed. 2d 1053 (1964); Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205, 212, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963); Patrick v. State, 227 A.2d 486, 490 (Del.1967). See Brown v. State, 372 P.2d 785 (Alaska 1962).

society. This is particularly the case with respect to a small frontier village such as Hoonah. In a more populous area the officer discovering a homicide could remain at the scene until trained investigators arrived to conduct an investigation. In that situation the presence of the officer making the legal entry would continue until summoned investigators arrived. Only minutes or possibly no more than an hour or two would ordinarily elapse between the legal entry and the commencement of the police investigation of the homicide. The lapse of time between the legal entry and the commencement of the investigation in the usual case has not been held to be so unreasonable as to affect the legality of the presence of the investigating officers on the premises.

Here the homicide was discovered at three o'clock in the morning in an isolated frontier village located on an island off the coast of southeastern Alaska. No magistrate, or coroner was available closer than Juneau on the mainland. Instead of being able to call upon trained police assistance, Chief Knudson had no alternative but to lock the premises in order to deliver appellant to the jail and to awaken the mayor to request advice and assistance. Upon the mayor's advice, and in order to comply with applicable state law,[7] the assistance of the Alaska State Police in Juneau was solicited by the mayor by telephone. Corporal Monagle and his investigating party departed Juneau for Hoonah by air at the first winter daylight and upon arrival immediately commenced their examination of the body, still lying on the floor where it was found, and then proceeded to conduct a general investigation at the scene.

We are convinced that no time was lost in commencing the investigation that could have been avoided; that neither appellant nor his wife and children were inconvenienced or placed in apprehension by the investigation conducted by Corporal Monagle and that appellant's constitutional right of privacy was not violated.

Appellant next claims error on the part of the court in admitting certain color photographs into evidence.

Exhibit 15 is a color photograph of a probe extending through decedent's head and projecting on each side. Exhibit 16 was a photograph of decedent's brain, placed on a board on his body. Exhibit 17 depicted decedent lying on the floor of appellant's home.

Appellant argues that the photographs were not of sufficient evidentiary value to justify their admission in view of their inflammatory effect on the jurors and the resulting prejudice.

This court has held that a photograph is admissible in evidence in the discretion of the trial judge, as an aid to the court or jury, after it has been shown to be a faithful representation of whatever it purports to depict, provided it is relevant,[8] and provided its evidentiary value is not outweighed by any prejudice it might create.[9]

---

7. AS 12.65.040 provides:

The coroner shall, when he is informed that a person has been killed by another or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by criminal means or he has committed suicide, inquire by the intervention of a jury into the cause of the death, and perform the other duties incidental thereto in the manner prescribed by law. The coroner shall go to the place where the dead person is, or, in the alternative, arrange for a peace officer to do so and report his findings to the coroner, on the basis of which the coroner may proceed with an inquest if an inquest is warranted.

AS 12.65.090 provides:

If the jury finds that a crime was committed in the killing, and also charges a person with the commission of the crime, the coroner, as a magistrate, shall immediately issue a warrant for the arrest of that person.

8. Maze v. State, 425 P.2d 235, 239 (Alaska 1967).

9. McIntyre v. State, 379 P.2d 615, 617 (Alaska 1963).

■ We do not find that the trial court abused its discretion in admitting the photographs. Plaintiff's Exhibit 15 depicting the probe protruding through decedent's head at an angle was illustrative of the testimony of a state witness as to the angle of penetration of the bullet. The photograph was relevant and its probative effect was not cumulative. We do not believe that its prejudicial effect outweighed its evidentiary value.

We reach the same conclusion with respect to the other photographs. Exhibit 16 illustrated the effect on the brain of an exit wound and substantiated oral testimony. Exhibit 17, as well as Exhibits 15 and 16 illustrated decedent's size which evidence was relevant with respect to appellant's defense.

■ With respect to his last point, we hold that the trial court did not err in refusing to grant appellant's motion for a judgment of acquittal.

Appellant argues that he killed decedent in self defense, in defense of his family and to prevent the commission by decedent of several felonies in appellant's home.

In ruling on appellant's motion for a judgment of acquittal the trial judge stated:

I want to just state very briefly for the record further comment with respect to my ruling on defendant's motion for judgment of acquittal. I revert to Jennings v. State, [Alaska] 404 P.2d 652, which the Court, the Supreme Court of Alaska quoted with approval from its earlier opinion in Bush v. State that on a motion for judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the State. If he determines that fair minded men in the exercise of reasonable judgment could differ on whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury.

The trial judge then stated:

It seems to me that taking the evidence most favorable to the State, reasonable men might find beyond a reasonable doubt that the defendant is not truthful in his view of the circumstances, that he was intoxicated, that he was * * * that he lost his temper, and he had a hot temper, that there was a shooting affray in which he may have fired the shots, and that he did' it from behind and at a time when the decedent was going away from him so that there wasn't an act of self defense involved but rather one of escape on the part of the deceased. It seems to me that this is * * * that this would be the interpretation of the evidence most favorable to the State, which, depending upon the jury's view as to credibility of the witnesses, might be the interpretation that they would take, and that reasonable men might think that there is no reasonable doubt about that, given their view of the credibility of the witnesses. And it's for these reasons that I ruled as I have on the motion for judgment of acquittal.

■ We have reviewed the record in the light of our rule in Davis v. State [10] by considering "only those facts more favorable to the state and such reasonable inferences as the jury may have drawn therefrom" and are satisfied that the trial judge correctly denied the motion.

The judgment is affirmed.

RABINOWITZ, Justice (concurring).

I concur in the majority's holding in regard to appellant's unlawful search and seizure contentions. In holding that appellant's constitutional rights were not violated, the majority relies in part upon the "exigency rule" exception and in part upon the "open-or-plain view" exception to the general rules governing searches and seizures. In Patrick v. State [1] the court explained the "exigency rule" in the following manner:

The general rules governing searches and seizures are subject to the excep-

10. 369 P.2d 879, 881 (Alaska 1962).

1. 227 A.2d 486, 489 (Del.1967).

tion of emergency situations, sometimes called the 'exigency rule.' The reasonableness of an entry by the police upon private property is measured by the circumstances then existing. The right of police to enter and investigate in an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers, and derives from the common law. United States· v. Barone (C.A. 2) 330 F.2d 543 (1964). The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties; it is an overriding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person. Frequently, the report of a death proves inaccurate and a spark of life remains, sufficient to respond to emergency police aid. As a general rule, we think, an emergency may be said to exist, within the meaning of the 'exigency' rule, whenever the police have credible information that an unnatural death has, or may have, occurred. And the criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact. Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963); Davis v. State, 236 Md. 389, 204 A.2d 76 (1964); compare Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 1200, 2 L.Ed.2d 1332 (1958).

In my view, neither the "exigency rule" standing alone or considered with the "open-or-plain view rule" is adequate to sustain the admissibility of all of the items of evidence which appellant claimed were pro-cured as a result of an illegal search and seizure by the police.

It is established that a search and seizure, without a warrant, must be justified under an exception to the constitutional requirement that a search must rest upon a search warrant. In Goss v. State,[2] we recognized this precept and in so doing also stated that, "The exception that we are concerned with here is that which recognizes the validity of a search without a warrant where the search is made incident to a lawful arrest." [3]

In my view, the admission in evidence of several exhibits which were obtained by police as a result of their warrantless entry cannot properly be justified by resort either to the "exigency rule" or by a holding that these items were not the products of a true fourth amendment search. For instance, some seven to ten hours after the "spark of life" had surely left the homicide victim, the police retrieved a bullet from the soil beneath the floor of appellant's home. A second .45 caliber bullet was found only after searching an outbuilding located a considerable distance from appellant's home, and the .45 weapon was found also as the result of a search. These exhibits can only be held admissible on the grounds that the warrantless search and seizure was made incident to a lawful arrest.

In Ellison v. State, this court said:

There seems to be no exact formula for the determination of reasonableness in connection with a search and seizure so each case must be decided on its own facts and circumstances.[4]

In my opinion the facts and circumstances of this record do not demonstrate that an unreasonable search and seizure occurred. As we noted in Weltz v. State,[5] "The ap-

2. 390 P.2d 220, 223 (Alaska 1964).

3. This exception was later utilized by this court in affirming the lower court rulings in Maze v. State, 425 P.2d 235, 238 (Alaska 1967), and Merrill v. State, 423 P.2d 686, 699–700 (Alaska 1967).

4. 383 P.2d 716, 719 (Alaska 1963). In support of this statement we cited United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653, 659 (1950). We reiterated our *Ellison* statement in Weltz v. State, 431 P.2d 502, 506 (Alaska 1967), and Merrill v. State, 423 P.2d 686, 699–700 (Alaska 1967).

5. 431 P.2d 502, 506 n. 21 (Alaska 1967).

plicable constitutional provisions reach only unreasonable searches and seizures." Here the record discloses a reasonable search and seizure made incident to an initial lawful entry of appellant's home and contemporaneous to the subsequent lawful arrest of appellant. The crime was committed about 1:20 p. m.; appellant was arrested at approximately 2 a. m.; between 2 a. m. and 3 a. m. the premises were locked up by Officer Knudson, and some seven to ten or more hours later the state police began their search of the premises and seizure of certain items.

In Weltz v. State, we held in part that:

[T]he exigencies of the situation justified the officer's seizure of the note. In the situation at bar, the constitutional provisions proscribing unreasonable searches and seizures did not prohibit the seizure of the note in order to prevent its destruction or removal.[6]

In the instant case, it is my opinion that the totality of the circumstances, namely, an untrained local law enforcement officer, an isolated bush village, and the lack of any clear information on the part of the state police in Juneau, prior to their departure for Hoonah, as to what had happened at appellant's residence, furnished ample justification for the police action which was taken. What is lacking is any evidence of arbitrary intrusion, or invasion, into the premises or privacy of appellant.[7] It is my belief that under all the circumstances the search and seizure by the state police properly may be viewed as a continuation of the lawful search which was begun by Officer Knudson incident to his lawful arrest of appellant.[8]

I, therefore, concur in the majority's rejection of appellant's search and seizure arguments. I am in agreement with all other aspects of the majority opinion.

---

6. 431 P.2d 502, 507 (Alaska 1967) (footnote omitted).

7. In Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, 935 (1957), the United States Supreme Court said in regard to the constitutional prohibition against unreasonable searches and seizures that:

The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.

8. In People v. Williams, 60 Cal.Rptr. 472, 430 P.2d 30, 32 (1967), the court, after stating that, "A defendant's absence from the scene does not of itself render illegal a search which, in view of the totality of surrounding circumstances, is reasonable" went on to say:

[T]hat the subsequent inventory and seizure at the police impound 'should be deemed a continuation of the search lawfully begun at the time and place

of arrest.' * * * [H]ere such action was undertaken in order to permit convenient cataloguing and reduction to possession of articles discovered during the initial search. We consider the latter reason for postponement as adequate as the former. Since the officers could lawfully have taken possession of the evidence at the scene of the initial search, the fact that for reason of convenience they actually did so at a different time and place does not of itself render the entire continuing search process unreasonable.

In line with the *Williams* case are the following authorities: Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1068 (1968); Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, 733 (1967); Trotter v. Stephens, 241 F.Supp. 33, 41 (E.D. Ark. 1965), aff'd, 361 F.2d 888 (8th Cir. 1966); People v. Webb, 56 Cal.Rptr. 902, 424 P.2d 342, 347 (1967); State v. Putnam, 178 Neb. 445, 133 N.W.2d 605, 609 (1965); People v. Moschitta, 25 A.D.2d 686, 269 N.Y.S.2d 70, 72 (1966).