[Crim. No. 7595. Fourth Dist., Div. Two. Mar. 24, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY EDGAR GATCH, Defendant and Appellant.

506

**COUNSEL**

Weldon Ray Reeves, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Defendant was found guilty by a jury of attempted burglary and sentenced to state prison for the term prescribed by law, pursuant to Penal Code section 1168. Probation in another case was revoked and state prison sentence imposed pursuant to Penal Code section 1168. The sentences were to be served concurrently.

Defendant argues that the recent case of *People* v. *Harris,* 15 Cal.3d 384 [124 Cal.Rptr. 536, 540 P.2d 632], should be given retroactive application and then applied herein. We conclude that under *Harris* the judgment must be affirmed and therefore do not address the issue of retroactivity.

## FACTS

At approximately 10:10 a.m. on February 28, 1975, Thomas Myers heard the burglar alarm sounding at the Mishak residence some quarter to half mile away. The area is not densely populated. The police were contacted and Myers went to investigate. He arrived after the lapse of approximately two minutes.

He noted an open screen door and rear gate. He observed defendant and another person about 200 yards from the house hitchhiking. Thereafter he saw a woman sitting in an old Dodge or Plymouth. He took down the vehicle license number. Defendant and the other man were walking and Myers saw them split up and go in opposite directions.

Shortly thereafter Detective Anton was responding to the call and saw defendant walking some half mile from the Mishak residence. Upon the officer's arrival Myers disclosed his observations. Anton recognized that the man he had seen walking matched the description Myers gave. Upon Anton's request, Deputy Bacon (the backup officer on his way to the scene) detained defendant and transported him to the Mishak residence where Myers identified him.

Defendant was arrested and his shoes seized at the jail. A heel print found at the Mishak residence could have been made by one of defendant's shoes. Mildred Davis, the driver of the old car, was granted immunity and testified that defendant and another went to the Mishak residence to burglarize it. She parked around the corner for the purpose of picking up the men. She heard the alarm and successfully picked up

defendant's companion. She was unable to pick up defendant because he had been taken into police custody.

## DISCUSSION

Defendant's instant notice of appeal from the judgment was filed on August 28, 1975. Thereafter, on October 7, 1975, the Supreme Court filed its opinion in *Harris.*

Factually *Harris* involved police detention of two suspects shortly after a burglary had occurred. At the time the police had sufficient cause for detention but the circumstances fell short of probable cause for arrest. The police transported the suspects a few blocks to the crime scene for the purpose of an in-the-field identification. While the identification could not be made, it turned out that one of the detainee's shoes matched a shoe print at the scene. This led to an arrest which disclosed additional incriminating evidence on the person of the arrestee.

In brief, the court held that in-the-field transportation in the absence of consent, other unusual circumstances or probable cause to arrest is an impermissible intrusion into the individual's constitutional liberties and any evidence discovered as the result thereof must be suppressed as the fruit of an unlawful detention. ▮ In concluding its discussion of the holding the case recites, "Similarly, the surrounding circumstances may reasonably indicate that it would be less of an intrusion upon the suspect's rights to convey him speedily a few blocks to the crime scene, permitting the suspect's early release rather than prolonging unduly the field detention." (At p. 391.)

*Harris* goes on to say that "Ordinarily there exist less intrusive and more reasonable alternatives to pre-arrest transportation. The officers may call or escort the witness to the detention scene for an immediate viewing of the suspect, or if they are able to procure satisfactory identification from the suspect, arrangements may be made for a subsequent confrontation with the witness. In addition, the consent of the suspect may be sought." (*Id.*)

In order to effect a permissible in-the-field identification, it is not reasonable to require the police to (1) abandon a crime scene before proper investigation is completed; (2) intentionally pass up the opportunity to detain a suspect; (3) endanger a citizen-witness by attempting to initially effect a detention at some location with the witness as a

passenger; or (4) send an unescorted witness to a detention scene when the investigation is just commencing and the possibility also exists that the witness will be needed elsewhere for other identifications. Control and thoroughness are an essential ingredient in the process of investigation and apprehension. In order to properly carry out their duties, the police must be given the opportunity to secure the crime scene, investigate thoroughly, detain suspects at the first opportunity and keep in direct contact with witnesses until the initial necessity of their presence passes.

At the time of detention-transportation, Anton had just arrived at the crime scene and Bacon was moving toward it on the same road on which defendant was walking. Anton immediately received the information of the two men walking in opposite directions as well as the license number of the old car. According to Myers' testimony, Anton and Bacon were the only officers that responded to the crime scene.

Here it would have been unreasonable to require Anton to immediately abandon the crime scene or Bacon to drive on past defendant to reach the crime scene. The only real alternative the two officers had here was to use the services of a third officer. The record before us discloses that only two officers were involved. In *Harris* there were a number of available officers thereby eliminating any need for consideration of what the police should do in a case like the one before us.

To here say that the least intrusive means available to the police was to call in a second backup unit so that the witness could be transported to the defendant is no more than a game of speculation. The conclusion would be predicated on the assumption another officer was then available and nearby. No such facts appear here. Instead, the facts demonstrate the location was sparsely populated, another suspect was presumably moving on foot in another direction and a suspect vehicle was on the move in the vicinity. There are limits on the number of immediately available backup units and presumably outside major metropolitan areas this number is substantially diminished. If additional units were involved in a search for the other suspects, it can hardly be said the police should have abandoned this effort in favor of dealing exclusively with defendant. In any event, the time involved in defendant's detention-transportation was so brief that it is extremely doubtful that calling in additional units would have accomplished a less intrusive means of handling the situation.

Looking to the degree of intrusion here upon defendant we find it slight. In time, the span between initial detention and identification at the scene was a maximum of 10 minutes and a minimum of 5 minutes. Unlike *Harris*, there is no evidence that defendant was initially subjected to a search. Unlike *Harris*, defendant was not handcuffed by the police. When the transporting unit arrived at the crime scene, the unhandcuffed defendant was allowed to immediately exit the police vehicle.

Another major difference between *Harris* and the instant case is the degree of certainty that the correct persons were detained. In *Harris* one man was seen in a car. There was the "possibility" of another suspect on foot but no second person was seen. The man in the car drove off. Thirty to 45 minutes later the police detained two men walking about three blocks from the crime scene. The occurrence was in metropolitan Los Angeles. In contrast here the specifically described defendant was known to be walking on the only through passage road in a remote area. He was seen by the witness starting his walk, seen by Anton a half mile down the road and finally seen by Bacon a mile down the road. There is little question—the right man was detained and only after the lapse of some 10 minutes from the time the witness last saw him.

Weighing the alternatives available to the police and the degree of intrusion to defendant as a result of the transportation, we conclude this case is one in which it was less of an intrusion to convey the defendant speedily the short distance to the crime scene so that an unduly prolonged detention would be avoided and defendant provided the opportunity for a very early release. On this record there was not a less intrusive and more reasonable alternative to pre-arrest transportation.[1]

---

[1]Defendant produced a driver's license with a Fontana address, said he lived in Highland, had just applied for a job in Mentone and was walking to a friend's home in Yucaipa. Thus defendant was unemployed and with an uncertain home address. This was not a situation where arrangements should have been made for defendant to later voluntarily appear for identification purposes.

As to whether defendant consented to the transportation or such a request was made, the record is silent. It is interesting that during the hearing at issue defense counsel twice began a factual comment as to what happened between defendant and Deputy Bacon and both times made an otherwise unusual pause and regrouping. (". . . once Deputy Bacon asked him—well, had him get into that patrol car"; ". . . Deputy Bacon asked him to—well, to get in that police car . . . .") In any case, if there was consent here there is no problem under *Harris*. If instead consent was refused, our above disposition controls. Whether or not consent was requested, given or refused, the result in this case remains the same.

Even were we to assume that the instant transportation was impermissible, a reversal of the instant case is far from a compelling conclusion. In *Harris* the court required suppression of the physical evidence that resulted from the unlawful detention. Factually *Harris* did not involve a positive identification by a witness and consequently was not faced with the intricacies of how this should be handled. In other areas of identification where a tainted identification procedure exists, an in-court identification will be permitted where it is shown that the witness identification is based upon an independent source rather than the tainted procedure. Such an approach should be applied where an identification results from an impermissible transportation. Here, all the facts support the conclusion that the in-court identification of defendant by the witness was based upon observation of the defendant at the crime scene prior to the initial arrival of Anton.[2]

If suppression was here ordered, it would only be as to the physical evidence of defendant's shoes. This evidence as presented at trial was of minimal evidentiary value. Defendant's conviction rested on a complete testimonial disclosure by an accomplice which was corroborated by the testimony of circumstances and identification by the citizen-witness. We are convinced beyond a reasonable doubt that any error in admitting the shoe evidence was harmless.

Judgment affirmed.

A petition for a rehearing was denied April 22, 1976.

---

[2]The record contains no pretrial motion by defendant to exclude evidence of his identification by Myers. Similarly no such motion was made at trial nor was an objection made to the in-court identification. On appeal it is only by a weak inference suggested that the in-court identification should have been excluded.